# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**UNITED STATES OF AMERICA**

**vs.**                                                  **Case No. 8:07-CR-49-T-27TGW**

**MARCO ANTONIO SALCEDO-IBARRA**
_____/

## ORDER

**BEFORE THE COURT** is Defendant's Motion to Dismiss Count Three of Superseding

Indictment (Dkt. 70) and the Government's Response in Opposition (Dkt. 74). Upon consideration,

Defendant's Motion to Dismiss is DENIED.

Count Three of the Superseding Indictment charges Defendant with conspiracy to possess

with intent to distribute five (5) kilograms or more of cocaine while on board a vessel subject to the

jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(a) and (b), and

21 U.S.C. § 960(b)(1)(B)(ii). (Dkt. 7). Defendant contends that he was never on board a vessel

subject to the jurisdiction of the United States and therefore is not subject to prosecution under the

Maritime Drug Enforcement Act (MDLEA), as codified in Title 46 of the United States Code. He

contends that the "Define and Punish" clause of the United States Constitution,[1] which authorizes

Congress to define and punish piracies and felonies committed on the high seas, does not grant

extraterritorial jurisdiction over a foreign national who was never "on board" a vessel subject to the

---

[1] Art. I, § 8, cl. 10, United States Constitution, often referred to as the "Piracies and Felonies Clause." *See United States v. Estupinan,* 453 F.3d 1336, 1338 (11th Cir. 2006).

jurisdiction of the United States, and whose alleged conduct otherwise had no nexus to the United States.

Defendant's contentions, although premised on an accurate recitation of the history of the Define and Punish Clause, as well as the limitations on extraterritorial jurisdiction embodied in the Constitution, are mistaken. As a general proposition, district courts have subject matter jurisdiction over all offenses committed against the United States. U.S. Const. art. III, § 2; 18 U.S.C. § 3231; *United States v. De La Garza*, 516 F.3d 1266, 1271 (11th Cir. 2008). It follows that an individual against whom an indictment is returned which alleges a violation of federal law is subject to the jurisdiction of the district courts. *United States v. Rendon*, 354 F.3d 1320 (11th Cir. 2003), *cert. denied,* 541 U.S. 1035 (2004).

Defendant is charged in Count Three with having conspired with others on board a vessel subject to the jurisdiction of the United States, to possess with intent to distribute cocaine. The alleged conspiracy is a violation of federal law. 46 U.S.C. § 70506(b). The object of the charged conspiracy, the possession of cocaine with intent to distribute while on board a vessel subject to the jurisdiction of the United States, is expressly proscribed by the MDLEA. Just as one who possesses cocaine with the intent to distribute while "on board" a vessel subject to the jurisdiction of the United States violates the MDLEA, one who conspires with those "on board" the vessel likewise violates the MDLEA. Just as the extraterritorial reach of the MDLEA is constitutional as to those on board the vessel, its reach is likewise constitutional as to an individual like Defendant, who allegedly conspired with those on board the vessel.[2]

---

[2] This case is therefore distinguishable from *United States v. Lopez-Vanegas,* 493 F.3d 1305 (11th Cir. 2007). There, there was no evidence that the defendants had ever agreed to possess cocaine in the United States, the requisite nexus under 21 U.S.C. § 841(a)(1), under which they were charged.

Under the MDLEA, the jurisdictional component is identical with respect to those "on board" the vessel, and those who conspire to commit an MDLEA offense:

> Therefore, for a district court to have adjudicatory authority over a charge that a defendant "knowingly or intentionally ... possess[ed] with intent to manufacture or distribute a controlled substance" in violation of 46 U.S.C. App'x § 1903(a), the Government must preliminarily show that the defendant was "on board a vessel subject to the jurisdiction of the United States." *Id.* Furthermore, for a district court to have adjudicatory authority over a charge that a defendant conspired to violate the substantive crime defined in subsection (a), the Government must preliminarily show that the conspiracy's vessel was, when apprehended, "subject to the jurisdiction of the United States." *Id*.;

*De La Garza*, 516 F.3d at 1271-72 (citing *United States v. Tinoco*, 304 F.3d 1088, 1107 (11th Cir. 2002))

To the extent Defendant complains that there is no "nexus" between his wholly extraterritorial conduct and the United States, and that his due process rights are violated by subjecting him to prosecution in the United States, his argument is unpersuasive. The Circuits disagree on whether a nexus between conduct ostensibly proscribed by the MDLEA and the United States is required. *United States v. Estrada-Obregon,* 270 Fed.Appx. 978, 981, n.1 (11th Cir. 2008). This Circuit, and others, require no such nexus in a prosecution under the MDLEA. *See United States v. Portocarrero*, 182 Fed.Appx. 889, 893 (11th Cir. 2006)("Moreover, we have noted that 'this circuit and other circuits have not embellished the MDLEA with a nexus requirement.'") (citing *United States v. Rendon, supra)*; *United States v. Cardales,* 168 F.3d 548, 552-53 (1st Cir.), *cert. denied,* 528 U.S. 838 (1999); *United States v. Martinez-Hildago,* 993 F.2d 1052, 1055 (3d Cir. 1993), *cert. denied,* 510 U.S. 1048 (1994); *United States v. Perez Oviedo,* 281 F.3d 400, 403 (3d Cir. 2002).

In those jurisdictions which require a nexus, the Government must demonstrate that there exists "a sufficient nexus between the conduct condemned and the United States" such that application of the statute would not be arbitrary or fundamentally unfair to a defendant. *United States v. Medjuck,* 156 F.3d 916, 918 (9th Cir. 1998); *United States v. Zakharov,* 468 F.3d 1171, 1177 (9th Cir. 2006); *United States v. Yousef,* 327 F.3d 56, 111 (2d Cir. 2003). In *Medjuck*, although the conspirators did not intend to deliver the drugs directly into the United States, "both economics and geography dictate that at least some portion of the hashish would at some point be found in the United States," and the requisite nexus was accordingly found to have been established. 156 F.3d at 919.

To the extent due process requires a nexus between the alleged conduct of Defendant and the United States in this MDLEA prosecution, a sufficient nexus between the alleged conduct and the United States exists. The affidavits filed in support of the Government's Response proffer facts which refute Defendant's contention that the crime charged in Count Three "had no effect or intended effect on the United States." (Dkt. 74-2, at ¶¶ 21). Although the ultimate facts supporting Count Three remain to be proven, it cannot be seriously disputed that shipments of cocaine interdicted in the Eastern Pacific on stateless vessels are destined, at least in part, for the United States. Once the conduct giving rise to subject matter jurisdiction occurs, those who conspire to commit that act are subject to prosecution under the MDLEA. The prosecution of one who participates in the underlying agreement to transport cocaine on board stateless vessels is not, therefore, arbitrary or fundamentally unfair, considering the underlying purpose of the MDLEA and its constitutional reach.

The MDLEA is a constitutional exercise of extraterritorial jurisdiction pursuant to the Define

and Punish Clause, under the "protective principle" of international law. *Tinoco,* 304 F.3d at 1110. Likewise, as applied to foreign nationals such as Defendant, the MDLEA is constitutional. *Estrada Obregon,* 270 Fed. Appx. at 979. International drug trafficking, as proscribed by the MDLEA, is universally condemned as an offense against the "Law of Nations" and presents a specific threat to the security and societal well-being of the United States. *United States v. Estupinan-Estupinan*, 244 Fed. Appx. 308 (11th Cir. 2007). Just as trafficking in narcotics on the high seas is considered an offense against the "Law of Nations," including the United States, likewise, conspiring to traffic in narcotics on the high seas constitutes such an offense.

Defendant makes no compelling argument that international law would be violated by his prosecution. Indeed, a nation is permitted "to assert jurisdiction over a person whose conduct outside the nation's territory threatens its national security." *Cardelas*, 168 F.3d at 553. Simply put, for purposes of jurisdiction under the MDLEA, there can be no meaningful distinction between those individuals found "on board" stateless vessels laden with cocaine and those who planned, organized or funded those ventures.[3]

Defendant contends that the Eleventh Circuit has "expressly recognized that Congress did not intend for the conspiracy portion of the MDLEA to apply to wholly extraterritorial conspiracies." (Dkt. 70, p. 14). This contention is a misreading of *De La Garza*, *supra*. The reference in *De La Garza* to whether Congress intended the MDLEA "to apply to wholly extraterritorial conspiracies" is in a footnote in the opinion. The court did not definitively address the issue. Rather, it only identified and paraphrased "arguments touched upon, though not explicitly raised, in De La Garza's

---

[3] To the extent Defendant suggests that his prosecution intrudes the sovereign territory of Colombia, suffice it to say that Colombia consented to Defendant's extradition for prosecution under the MDLEA. (Dkt. 74-3).

brief . . . ." *De La Garza*, 516 F.3d at 1272, n.4.

The footnote in *De La Garza* cites *United States v. MacAllister,* 160 F.3d 1304, 1307 (11th Cir. 1998). In *MacAllister,* the Court discussed "whether 21 U.S.C. § 963 may be applied extraterritorially, and if so, whether its application to MacAllister's case is appropriate." 160 F.3d at 1306. Recognizing that "[f]ederal criminal statutes may properly include extraterritorial effects," the Court examined "whether 'language in [§ 963] . . . gives any indication of a congressional purpose to extend its coverage beyond places over which the United States has sovereignty or has some measure of legislative control.'" *Id.* at 1307. Acknowledging that §§ 953 and 963 do "not expressly provide for extraterritorial application," the Court nonetheless found the requisite Congressional intent inferred from "the nature of the offense." *Id.*

> Under this rule, the district court properly concluded that drug smuggling is an offense where extraterritorial application is inferred. "[B]y its very nature [drug smuggling] involves foreign countries, and . . . the accomplishment of the crime always requires some action in a foreign country . . . ."(citation omitted). Logic dictates that Congress would not have passed a drug conspiracy statute that prohibits international drug smuggling activities, while simultaneously undermining the statute by limiting its extraterritorial application.(citation omitted).

160 F.3d at 1308.

The MDLEA, like the Comprehensive Drug Abuse Prevention and Control Act of 1970 discussed in *MacAllister*, is intended to apply to international drug smuggling. Unlike the Comprehensive Drug Abuse Prevention and Control Act of 1970, however, the MDLEA expressly provides for extraterritorial application to those possessing narcotics with the intent to distribute while on board vessels subject to the jurisdiction of the United States. Defendant's contention that Congress did not intend to apply the conspiracy provision of the MDLEA to one who conspires with others found on board a vessel subject to the jurisdiction of the United States, and that application

6

of the MDLEA to him would be contrary to international law is unpersuasive, particularly

considering the reasoning in *MacAllister*. There, application of the Comprehensive Drug Abuse

Prevention and Control Act of 1970 was approved based upon "the objective territorial principle."

The court found that "the defendant's actions . . . produced some effect in the United States . . . ."

*Id.* at 1307. Extraterritorial application of the statute was therefore reasonable, based on the

principle that "[d]rug smuggling is a serious and universally condemned offense," and therefore, "no

conflict is likely to be created by extraterritorial regulation of drug traffickers." *Id*.

Here, extraterritorial application of the conspiracy provisions of the MDLEA to Defendant,

who was not found on board a vessel subject to the jurisdiction of the United States, but allegedly

conspired with those on board, is justified on the objective territorial principle. "The protective

principle permits a nation to assert jurisdiction over a person whose conduct outside the nation's

territory threatens the nation's security or could potentially interfere with the operation of its

governmental functions." *United States v. Romero-Galue,* 757 F.2d 1147, 1154-55 (11th Cir. 1985)

(citing *United States v. Marino-Garcia*, 679 F.2d 1373, 1381 n.14 (11th Cir. 1982), *cert. denied*, 459

U.S. 1114 (1983)); *United States v. Columba-Colella*, 604 F.2d 356, 358 (5th Cir. 1979); *Rivard v.*

*United States*, 375 F.2d 882, 885, n.7 (5th Cir. 1967), *cert. denied*, 389 U.S. 884 (1967) ("There is

nothing in the objective territorial principle announced in *Strassheim*, *Ford* and *Marin* which creates

a jurisdictional distinction between a substantive offense and a conspiracy.").

As discussed, the substantive act proscribed by the MDLEA, the possession of narcotics

while on board a vessel subject to the jurisdiction of the United States, has a sufficiently deleterious

effect within the United States to justify this country in prohibiting that conduct. *See United States*

*v. Estupinan,* 453 F.3d 1336, 1339 (11th Cir. 2006)("Indeed, as the Third Circuit has recognized,

'[i]nasmuch as the trafficking of narcotics is condemned universally by law-abiding nations, we see no reason to conclude that it is 'fundamentally unfair' for Congress to provide for the punishment of persons apprehended with narcotics on the high seas.'"). Just as "it is not fundamentally unfair to prosecute those 'apprehended with narcotics on the high sea,'" it is not fundamentally unfair for Defendant to be prosecuted for conspiring to engage in such conduct. Defendant's Motion to Dismiss Count Three is accordingly DENIED.

**DONE AND ORDERED** in chambers this 6th day of July, 2009.


/s/James D. Whittemore
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record

8